UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
DANIEL P. SPRAGUE,

           Plaintiff,

  -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:17-cv-0948(FB)

*Appearances:*
*For the Plaintiff*
MICHAEL SWAALEY
811 Castleton Avenue
Staten Island, NY 10310

*For the Defendant*
RICHARD DONOGHUE
United States Attorney
Eastern District of New York
By PETER W. JEWETT
Assistant U.S. Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Daniel P. Sprague ("Sprague") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings. For the reasons stated below, Sprague's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

# I

Beginning in 2004, Sprague sustained several injuries to both his ankles while working as a New York City Police Officer. Over the course of several years, Sprague underwent multiple surgeries and experienced varying degrees of swelling and pain in his ankles. On January 16, 2009, the Medical Board of the Police Pension Fund, made up of three doctors, issued a report stating that Sprague's injuries precluded him from performing the full duties of a police officer. Sprague retired from police duty in March 2009. On October 18, 2011, Sprague filed for DIB, alleging that he became disabled on January 31, 2010. His application was denied, and he sought a hearing before an Administrative Law Judge ("ALJ").

On April 26, 2013, ALJ Moises Penalver ruled that Sprague was not disabled. The Appeals Council declined review on October 22, 2014. Sprague brought a civil action in this court. On August 10, 2015, the Honorable Brian M. Cogan remanded the case for further development of the record. *Sprague v. Colvin*, No. 14 Civ. 6790 (BMC) (E.D.N.Y. Aug. 10, 2015).

Judge Cogan directed the ALJ to obtain additional evaluations and medical opinions that would allow a reasonable determination of Sprague's Residual Functional Capacity ("RFC"). The Appeals Council issued a remand order on December 8, 2015, and—after two additional hearings—ALJ Jack Russak issued an unfavorable decision on December 6, 2016.

Applying the familiar five-step evaluation process,[1] the ALJ determined that (1) Sprague had not engaged in any substantial gainful activity between January 31, 2010—the alleged onset date—and December 31, 2014—the date that he was last insured; (2) Sprague's internal derangement of both ankles was a severe impairment; but (3) Sprague's impairment did not meet the severity of one of the listed impairments so as to trigger his automatic classification as disabled. The ALJ determined that Sprague had the RFC to perform sedentary work, with the following non-exertional limitations:

> he could sit or stand alternatively at will, provided he was not off-task more than 5% of the work period; when sitting his legs could be elevated up to 24 inches; he could never operate foot controls or foot pedals; he could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds; he could never balance, crouch, kneel or crawl; he could occasionally stoop; he could have no exposure to moving machinery, unprotected heights or driving vehicles; he was limited to jobs that could be performed while using an assistive device required at all times when standing; due to physical fatigue he would have been off-task up to 5% of the day, in addition to regularly scheduled breaks.

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in [her] prior type of work, [and] (5) there is not another type of work the claimant can do." *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)–(f)). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

Applying this RFC determination to the remaining steps, the ALJ determined that (4) Sprague was not able to perform past relevant work as a police officer and that (5) Sprague could perform certain forms of sedentary work that did not require the performance of activities beyond Sprague's RFC. The ALJ, therefore, concluded that Sprague was not disabled during the relevant time period. Sprague timely sought judicial review.

## A.     Medical Opinion Evidence

The ALJ relied chiefly on four doctors' medical opinions in determining that Sprague is not disabled.

### 1.     Treating Physician Steven Sheskier, M.D.

Sprague began seeing Dr. Sheskier, an orthopedic surgeon, in 2007, when he performed a left ankle arthroscopy and an ankle ligament repair on Sprague. Sprague continued seeing Dr. Sheskier intermittently throughout the relevant time period. In 2016, after Judge Cogan's remand, Dr. Sheskier issued an evaluation of Sprague's ability to do work-related activities. Dr. Sheskier concluded that Sprague was "unable to sit [or] walk for long periods" and that "due to pain and discomfort [Sprague] needs to elevate [his] legs and ice frequently." AR 577. Specifically, he stated that Sprague could stand and/or walk for less than 2 hours in a workday and sit for less than 6 hours in a

workday. The ALJ gave some weight to this opinion, finding that some of Dr. Sheskier's proposed limitations were consistent with the record.[2]

## 2. Treating Physician Stanley Soren, M.D.

Sprague began seeing Dr. Soren, an orthopedist, in May 2013. Between 2013 and 2014, Dr. Soren's notes state, among other things, that Sprague could not stand or walk for a prolonged period and that stairs would be difficult for him. He also noted that it would be difficult for Sprague to walk securely without a cane. The ALJ gave only "some weight" to Dr. Soren's opinion because the opinion "is rather vague and does not identify more specific limitations." AR 327.

## 3. Consulting Physician Sujit Chakrabarti, M.D.

Dr. Chakrabarti saw Sprague for two consultive orthopedic examinations—one in 2011 and one in 2016. Dr. Chakrabarti's 2016 evaluation found that Sprague could stand for 30 to 45 minutes, sit for 60 to 90 minutes with his legs elevated, walk for three to four blocks with a cane, and carry five to 10 pounds. But, as the ALJ noted in his 2016 decision, Dr. Chakrabarti's 2016 decision post-dated the relevant time period, which ended December 31, 2014. Dr. Chakrabarti's evaluation does not seem to be retrospective.

---

[2] The Court notes that Dr. Sheskier's 2016 evaluation—despite being more than a year since Sprague was last insured and outside the relevant time period—does not purport to be retrospective.

### 4. Non-Examining Physician, Louis Fuchs, M.D.

After Judge Cogan's remand, the ALJ had Dr. Fuchs, an orthopedic surgeon, review the record and assess Sprague's ability to do work-related activities. Dr. Fuchs did not examine Sprague but concluded that he could sit for two hours at a time and could stand and walk for one hour at a time, though he placed a question mark next to the responses regarding standing and walking. Dr. Fuchs also opined that, in one work day, Sprague could sit for a total of eight hours, stand for a total of two hours, and walk for a total of two hours. Dr. Fuchs also placed a question mark next to those responses about standing and walking. The ALJ gave some weight to Dr. Fuchs' opinion, noting that he had found "somewhat greater limitations" than Dr. Fuchs' notes reflected. AR 325.

## B. Sprague's Testimony

Sprague testified at the hearings in 2013 and 2016. In 2013, he testified that standing for any length of time and sitting for too long caused him ankle pain. He stated that he could walk two blocks in a day but that he would need to rest after. He testified that he could stand for 30 to 45 minutes before the pain became too great and that he could sit for 60 to 90 minutes before he would need to get up, although he could sit for longer with his feet elevated. Sprague further explained that his pain caused issues with attention and concentration and that he took Percocet for pain several times in a week.

In 2016, after the relevant time period, Sprague again testified that he had pain in both ankles but that now he took only Naproxen for pain. He estimated that he could walk one city block but would need to rest and that he could stand for 30 to 45 minutes if he could move around while doing so. He testified that his most comfortable position was sitting with his legs elevated above his heart and that he would nap often during the day because he did not sleep well at night due to discomfort.[3]

C.    **Vocational Evidence**

At the October 2016 hearing, a vocational expert, Dawn Blythe, testified as to Sprague's employability. The ALJ asked her if an individual of Sprague's age, education, and work experience, who had the RFC detailed above, could perform any of Sprague's past relevant work. She said that such a person could not, but that he could perform certain sedentary jobs that exist in significant numbers in the national economy—that of an order clerk, a charge account clerk, and a call out operator. She noted that such a person would be employable if he were off-task for 5% of the day, but not 20%, and that he would not be able to elevate his legs above 24 inches.

## II

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004);

---

[3] The 2016 testimony did not seem to be retrospective in nature.

see also 42 U.S.C. § 405(g). Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *cited in, e.g.*, *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings cannot stand. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Sprague makes several arguments on appeal. First, he contends that the ALJ improperly weighed the evidence—including the treating physicians' opinions—in concluding that Sprague is not disabled. Second, Sprague claims that the Commissioner improperly evaluated the credibility of his testimony, including his complaints of pain and a greatly reduced RFC. Third, he argues that the Commissioner improperly applied the vocational regulations and Social Security Rulings to an individual with his RFC, age, education, and work background. Fourth, he contends that the Commissioner failed to follow Judge Cogan's instructions on remand.

## A. Treating Physician Rule

The treating physician rule dictates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R.

§ 404.1527(c)(2)). If the ALJ does not give a treating physician's opinion controlling weight, he or she must provide "'good reasons' for the weight given to that opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). The ALJ must apply this same standard to the opinion evidence of non-examining sources. 20 C.F.R. § 416.927(e)(2)(ii).

However, an RFC assessment is not subject to the treating physician rule. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner."); *id.* § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner[.]"). Accordingly, the ALJ did not need to give controlling weight to the treating physicians' RFC assessments, including their assessments of Sprague's limitations regarding sitting, standing, walking, and lifting objects.[4] Further, the ALJ *did* explain why he gave limited weight to the various doctors' medical opinions.

## B.  RFC Assessment

When assessing a claimant's RFC, the ALJ must "consider [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work." 20

---

[4] Contrary to Sprague's argument on appeal, the ALJ did not set his own expertise against that of a physician—he relied, at least partially, on the opinions of Dr. Soren, Dr. Chakrabarti, and Dr. Fuchs in determining Sprague's RFC. AR 325–27.

C.F.R. § 404.1545(a)(4). Pain and other symptoms can affect the claimant's ability to meet those work requirements. *Id.* § 404.1545(e).

1.  **Pain and Fatigue**

Here, the ALJ asserted that he considered Sprague's pain and other symptoms and incorporated them into the RFC, which allows for Sprague to (1) alternate between sitting and standing and (2) elevate his legs while sitting. AR 325. But the ALJ also highlighted that, at the October 2016 hearing, Sprague had "noted that he was taking no medications other than Naproxen and acid reflex medication, which indicates his degree of pain is tolerable." AR 325. In so doing, the ALJ opined on Sprague's level of pain in 2016, almost two years after the relevant time period in this case.

In fact, as of the April 2013 hearing, Sprague described his ankle pain as "constant," AR 34, and testified that he was taking Percocet for the pain "a couple of times a week." AR 40. He also noted that he tried not to take the Percocet because he feared becoming addicted and that he did not think that the Percocet helped him. Sprague further testified in 2013 that his pain caused him difficulty concentrating and that he would reread newspaper articles three times before understanding them. Further, contemporaneous notes during the relevant time period from Dr. Sheskier, Dr. Soren, and Dr. Chakrabarti show that Sprague complained of pain.

The record, then, clearly demonstrates that, from January 2010 until December 2014, Sprague experienced ongoing pain in his ankles and took medication for it.

Indeed, in the 2013 decision, the ALJ provided in the RFC that Sprague would be off-task 5% of the day due to pain. The ALJ in 2016, however, allowed for Sprague to be off-task 5% of the time only for physical fatigue. Accordingly, the Court remands this case to the ALJ so that he can consider how Sprague's pain, during the relevant period, affected his RFC.

Relatedly, Sprague has testified that he has trouble sleeping, which results in an inability to stay awake throughout the day. Indeed, in 2013 Sprague testified that on a good night he would sleep three and a half to four hours.[5] The ALJ seemingly incorporated this fatigue into the RFC when he allowed for Sprague to be off-task up to 5% of the day "due to physical fatigue." AR 322. But, given Sprague's testimony that he drifts in and out of sleep during the day, the ALJ's approximation of being off-task 5% of the day seems quite low, and he has not explained how he arrived at that approximation. Nor does any part of the record serve as a basis for that number.[6] The ALJ's failure to explain this basis is material because the vocational expert testified that if Sprague were off-task 20% of the day, he would be unemployable.

---

[5] In his original decision, the ALJ—in questioning Sprague's credibility—pointed to an inconsistency between this testimony and notes from a December 2011 examination, in which Sprague stated that his sleep is "occasionally disturbed." AR 293. The Court does not find those two accounts to be inconsistent. There is a time difference of almost a year and a half between those two statements, and his ability to sleep may have deteriorated as his ankle injury worsened.

[6] Judge Cogan noted the same in his order of August 10, 2015. But the ALJ did not fix that particular deficiency on remand.

## 2. Leg Elevation

Sprague also argues that the ALJ erred in including in Sprague's RFC that his legs could be elevated up to 24 inches. Sprague testified that his most comfortable position is sitting with his legs elevated as much as possible so that his legs are above his heart. Though he testified that in public he would alternate legs, keeping one on a chair at a time, the record does not reveal for how long Sprague would have been able to sit in that suboptimal position during the relevant time period—none of the doctors specified how high Sprague needed to lift his legs in order to sit for many hours. Whether Sprague could spend a day with his legs elevated only up to 24 inches is material because the vocational expert testified that he would be unemployable if his legs were elevated any higher than 24 inches.

In light of the above deficiencies in the ALJ's RFC assessment, the Court remands this case for further development of the record and reconsideration of the RFC in light of that evidence. The ALJ should: (1) obtain medical opinions and/or testimony from Sprague regarding what percentage of the day he would have been off-task at work due to both pain and fatigue; (2) obtain medical opinions and/or testimony from Sprague regarding how long he would have been able to sit with his legs elevated no more than 24 inches; and (3) conduct an additional hearing receiving and considering this new evidence. In doing so, the ALJ should be mindful that the medical opinions and

testimony must be retrospective and address the time period of between January 31, 2010, to December 31, 2014.

## III

Sprague's motion is GRANTED, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

/S/ Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 10, 2018